## SUPERIOR COURT

Arthur E. Dwelly et als  
vs.                                 Eq.No.2017  
Herman Rocklin et als  

RESCRIPT.

December 2, 1924.

BARROWS, J. Heard on demurrer to bill of complaint.

The bill, brought April 21, 1924, by 28 complainants, alleges that each is a lessee in possession of a lot of land with cottage thereon under a written lease between each complainant and the New York, New Haven and Hartford Railroad Company. The leases, a sample one being attached to the bill, are not identical in date of execution or the amount of rental, and of course each householder has a separate parcel of land. The parcels are all situated on a plot known as The Hummocks in Portsmouth, and the houses constitute what are known as summer cottages. All leases contain a provision that the premises are to be used only for "maintaining a cottage thereon." The rent is payable yearly in advance and the lease may be terminated by either party on thirty days' notice in writing to the other. A clause in the lease reads: "The provisions hereof shall apply to

the successors, executors, administrators and assigns of the respective parties." There is a further provision that before the termination of the lease any lessee may remove his cottage from the premises and that if it is not removed prior to the termination, it shall become the property of the lessor.

The bill alleges that the New York, New Haven and Hartford Railroad Company has sold to the respondents, subject to the leases, its reversionary interest in the real estate; that respondents on March 17, 1924, notified each complainant of intention to terminate each lease on April 21, 1924; that no complainant has attorned to respondents, and the bill avers that no complainant occupies the position of tenant and landlord with said respondents.

The bill then goes on to recite that complainants desire to vacate the premises within such reasonable time as they are able to do so, and avers their efforts, which they expect to be successful, to procure possession of nearby parcels of land across the tracks of the Railroad Company to which the cottages can be removed; that these efforts have so far failed by reason of facts with which these respondents have no connection; that when the right to occupy the new land shall be acquired, the Railroad Company has granted its permission to move the cottages across its tracks.

The bill asserts that even if the notice of termination by respondents be deemed a valid notice, that the giving of the same to all complainants to become operative at the same date will enable respondents to take advantage of the forfeiture clause in the lease and exact a penalty from complainants in the form of loss of their cottages instead of using said clause, as was intended, as a means of securing compliance with the terms of the lease.

Complainants seek to be relieved from this forfeiture and offer to pay such damages as respondents may suffer by reason of the non-removal of the cottages prior to the termination of the leases.

Respondents demur to the bill for misjoinder of parties complainant, because of multiplicity of suits to be avoided is not such as justify equitable interference; because the lease made a part of the bill shows attornment to be unnecessary to enable respondents to give notice of termination; because no forfeiture of a nature justifying equitable relief is set forth, and, lastly, because complainants have a full, adequate and complete remedy at law.

The last ground seems to us without merit. Protection of a lessee in possession from unwarranted or threatened interference by one without right has long been a ground for equitable jurisdiction.

Hughes vs. Kirshaw, 42 Col. 210, cited by respondents, is evidently a type of equitable proceeding though in a code state. The question attempted to be raised on this bill, filed before the termination of the tenancy, is not one of title or right of possession; it is whether respondents shall be allowed to so marshal circumstances as to gain unfairly title to complainants' cottages by reason of a particular term of the existing leases.

While recognizing the confusion among the cases as to misjoinder of parties and that those cited by respondents sustain their contention, we yet believe the better law to be that there is not a misjoinder in this case. The test of privity between complainants referred to in the older cases, and the meaning of which is very much in doubt, should yield to the test as to whether there are common relations, common interests and a common question between the parties, and whether there is a chance

to settle all rights in a single procedure without undue confusion. It is often difficult to determine the existence of these common qualities. Each case much rest upon its own peculiar facts. The basis of equitable interference is particularly to avoid multiplicity of suits. Equity hopes to expeditiously settle controversies. In this case there can be little doubt that such purpose is attainable without injury to the rights of any one and without any confusion by permitting the complainants to join in a single bill in equity rather than maintain twenty-eight separate bills. The right of respondents to terminate all tenancies at the same time can be easily settled in a single proceeding. Such a joinder of parties is fully discussed in Pomeroy's Equity Jurisprudence, 4th ed., Vol. 1, Sec. 245 sqq. and especially Sections 255 and 257. Compare also Lonsdale Co. vs. Moore, 21 R. I. 499.

We do not believe attornment was necessary to make valid the notice of termination of tenancy given by respondents. Complainants rely on Comstock vs. Kavanaugh, 17 R. I. 233. Without regard to the adverse criticism upon that case in Tiffany's Landlord and Tenant, Vol. 1, p. 875, and in the note in L. R. A., N. S. 1915, C, pages 201-2, we believe the case at bar is clearly distinguishable. The Kavanaugh case was not a conveyance of the reversionary fee in the real estate by the original lessor. It was the execution of a second lease by the original lessor A to B of a building, a portion of which was still held by C as lessee. The decision of the Court under a statute requiring notice to quit to be given by the owner rests upon the theory that at common law B, as the new lessee, got not a conveyance but merely a contract for the possession of the land and, until entry, had no estate or interest in the land, hence he was not the owner. It was because he was not

the owner and had no interest in the land that the Court held attornment to be necessary and that the notice to quit given by B was of no validity. Entry is not necessary to complete the conveyance of a fee in reversion by deed from the original lessor. The grantee by virtue of a deed of the entire reversion, gets an estate in the land. The estate is, of course, subject to the existing lease, but an ownership is at once created and the position of the grantee is not that of a person holding merely a contract giving him a subsequent right to possession. In the present case the express provisions of the lease, as quoted above, show that all its provisions apply to the successors and assigns of the respective parties. The case of Bamford vs. Haley, 12 East 464, 1910, though an old case, appeals to us as sound law in holding that the notice of the termination of the tenancy under the terms of a lease less favorable to respondents than the present case can be given by the owner of the reversion in fee; that the right to give notice is a covenant running with the land.

The remaining question is whether the respondents show an attempt to enforce by way of forfeiture the provisions of the lease intended only as security. There crept into the argument statements that sufficient building movers and help could not be procured at Portsmouth and within the time allowed for removal of all of complainants' cottages, and that even if help could be seccured, it would be physically impossible to move all the cottages during the same time because they would be in each other's way. Respondents urged that it was simply a case of putting on a large enough force to help to get the

We must take our facts as averred in the bill, however. The fact averred cottages off.

in the seventh paragraph of the bill furnishes no ground of complaint against respondents. They are not

interested in the place to which complainant's desire to remove their cottages, nor in the difficulties they have had in securing same. The real gist of the bill in this respect is found in the ninth paragraph in the following aversion: "That the respondents are endeavoring to take and will take, unless they are prohibited by this Honorable Court from taking advantage of the said provisions in said lease for the purpose of exacting a penalty from the complainants instead of using the same as assurances that the terms of said lease will be complied with."

This is too loose a statement upon which to base a bill. Respondents can not tell from the bill what complainants claim respondents have done or failed to that takes wrongful advantage of the provisions of the lease. Evidently complainants mean to aver that respondents, while acting within the strict terms of the lease, have purposely so arranged the time of termination of all the tenancies that what might be a reasonable time for the removal of one cottage is not such for all together; that it is physically impossible for most of the cottagers to escape the loss of their cottages by non-removal if the notice of termination as given be strictly adhered to. Whether equity ought to interfere under such circummstances is a nice question. At all events, the alleged acts of oppression should be stated clearly. Without such statement we shall not attempt to pass upon the question argued by counsel whether just compensation can be made to respondents if a forfeiture is prevented.

The demurrer to this portion of the bill on the ground of uncertainty seems to us well founded.

We overrule the first, second and fifth grounds of demurrer.

We sustained the third, fourth, seventh, eighth and ninth.

The sixth we eliminated at the hearing by making the lease a part of the bill of complaint,

Complainants may have fifteen days within which to amend, and respondents fifteen days thereafter within which to demur and answer said amended bill.

For Complainants: William Williams, Greene, Curran & Hart.

For Respondents: Jeremiah A. Sullivan.